*E-FILED - 3/24/10*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID PATTERSON, ) | Nos. C 08-2492 RMW (PR) |
| ) | C 08-2681 RMW (PR) |
| Petitioner, ) | |
| ) | ORDER DENYING |
| vs. ) | PETITIONER'S PETITIONS |
| ) | FOR WRIT OF HABEAS |
| BEN CURRY, Warden ) | CORPUS; DENYING |
| ) | CERTIFICATES OF |
| Respondent. ) | APPEALABILITY AS |
| ) | UNNECESSARY |

These habeas corpus petitions were filed by a state prisoner pursuant to 28 U.S.C. 2254 and directed to decisions in 2006 and 2007 by the California Board of Parole Hearings ("Board") finding petitioner unsuitable for parole. Petitioner argues that the Board's denial of parole in 2006 and 2007 deprived him of his right to due process because they were not supported by at least some evidence that he would be a danger to the community if released. In each case, respondent was ordered to show cause why the petition should not be granted. Respondent filed answers denying the petitions, along with supporting memorandum and exhibits, and petitioner filed a traverse in response.

///

///

///

# BACKGROUND[1]

On approximately May 18, 1980, 20-year old petitioner and two other individuals broke into 80-year-old Jacob Cookis's home. Once inside, petitioner climbed on top of Cookis's back and held him down. When Cookis started yelling and struggling, petitioner hit Cookis on the side of his head. The other defendants ransacked the bedroom and looted the front room of the house. When the three men left the house, having taken three hundred dollars, Cookis was no longer screaming or moving. The victim was found dead a day or two later by Cookis's sister. His feet had been bound by a telephone cord, his mouth gagged with a bandanna, and he had been struck in the head. Cookis died of suffocation.

On March 23, 1981, petitioner was arrested for burglary of a Jack in the Box. While in custody, petitioner admitted a second Jack in the Box burglary. On May 11, 1981, petitioner was given probation for the burglary for three years. On July 15, 1981, while petitioner was still on probation, an anonymous caller informed the police that petitioner was involved with the 1980 murder of Cookis.

On December 20, 1983, petitioner was convicted of first degree murder (Cal. Penal Code § 187) and was sentenced to twenty-five years-to-life in state prison. The Board found him unsuitable for parole at his fifth parole hearing in 2006, and petitioner filed unsuccessful habeas petitions in all three levels of the California courts challenging the Board's decision. Thereafter, petitioner filed the first of the two federal petitions addressed in this order (case number C 08-2492 RMW (PR)), in which he challenges the Board's denial of parole in 2006.

In 2007, the Board held petitioner's sixth parole hearing, and again found him unsuitable for parole. Petitioner challenged this decision in habeas petitions in all three levels of the California courts, but these petitions also failed. Thereafter, petitioner filed the second of the two federal petitions addressed in this order (case number C 08-2681 RMW (PR)), in which he

---

[1] The relevant facts are taken from the Transcript of the February 26, 2006 Subsequent Parole Consideration Hearing. (Case No. C 08-2492 RMW (PR), Resp. Ex. 1, Ex. A ("2006 Tr.") at 11-13; Case No. C 08-2681 RMW (PR), Resp. Supplement to Exhibit 3, Ex. 1 ("2007 Tr.") at 11-13.)

challenges the Board's denial of parole in 2007.[2]

## DISCUSSION

**A.     Standard of Review**

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim, "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. 2254(d). The first prong applies both to questions of law and to mixed questions of law and fact, Williams (Terry) v. Taylor, 529 U.S. 362, 407-09 (2000), while the second prong applies to decisions based on factual determinations, Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of Section 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams (Terry), 529 U.S. at 412-13. A state court decision is an "unreasonable application of" Supreme Court authority, falls under the second clause of Section 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. at 411. Rather, the application must be "objectively unreasonable" to support

---

[2] While the two federal petitions were pending, the Board held another parole hearing on March 4, 2009, and again found petitioner unsuitable for parole. The two instant federal petitions do not challenge the Board's denial of parole in 2009. However, on January 6, 2010, petitioner filed a separate federal petition challenging that decision, C 10-0063 RMW (PR), which will be addressed in a separate order.

1  granting the writ. See id. at 409.

2  "Factual determinations by state courts are presumed correct absent clear and convincing
3  evidence to the contrary." Miller-El, 537 U.S. at 340. A petitioner must present clear and
4  convincing evidence to overcome Section 2254(e)(1)'s presumption of correctness; conclusory
5  assertions will not do. Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual
6  determination will not be overturned on factual grounds unless objectively unreasonable in light
7  of the evidence presented in the state-court proceeding." Miller-El, 537 U.S. at 340.

8  When there is no reasoned opinion from the highest state court to consider the
9  petitioner's claims, the federal habeas court looks to the last reasoned opinion in conducting its
10 analysis under Section 2254(d). See Ylst v. Nunnemaker, 501 U.S. 797, 801-06 (1991);
11 Shackleford v. Hubbard, 234 F.3d 1072, 1079, n.2 (9th Cir.2000). Here, the opinions of the
12 California Court of Appeal and the California Supreme Court are summary. The superior court
13 opinions are the last reasoned opinions to address petitioner's claims, and they are consequently
14 the operative state court decisions for purposes of Section 2254(d).

15 **B.    Case Number C 08-2492 RMW (PR)**

16    **1.    Respondent's Issues**

17 In order to preserve the issues for appeal, respondent argues that California prisoners
18 have no liberty interest in parole, and that if they do, the only due process protections available
19 are a right to be heard and a right to be informed of the basis for the denial – that is, respondent
20 contends there is no due process right to have the result supported by sufficient evidence.
21 Because these contentions are contrary to Ninth Circuit law, they are without merit. See Irons v.
22 Carey, 479 F.3d 658, 662 (9th Cir. 2007) (applying "some evidence" standard used for
23 disciplinary hearings as outlined in Superintendent v. Hill, 472 U.S. 445-455 (1985)); Sass v.
24 California Bd. of Prison Terms, 461 F.3d 1123, 1128-29 (9th Cir. 2006) ("some evidence"
25 standard identified in Hill is clearly established federal law in the parole context for purposes of
26 § 2254(d)); McQuillion v. Duncan, 306 F.3d 895, 902 (9th Cir. 2002) ("California's parole
27 scheme gives rise to a cognizable liberty interest in release on parole").

28 ///

Order Denying Petitioner's Petitions for Writ of Habeas Corpus; Denying Certificates of Appealability as Unnecessary
P:\pro-se\sj.rmw\hc.06\Patterson429den          4

### 2. Petitioner's Due Process Claim

Petitioner claims that the Board's decision was arbitrary and capricious, in violation of due process, because it did not adequately consider the evidence of his suitability and instead relied on the unchanging circumstances of his commitment offense and other unchanging factors.

A parole board's decision satisfies the requirements of due process if "some evidence" supports the decision. Sass, 461 F.3d at 1128-29. "To determine whether the some evidence standard is met 'does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached'" by the parole board. Id. at 1128 (quoting Hill, 472 U.S. at 455-56). The "some evidence standard is minimal, and assures that 'the record is not so devoid of evidence that the findings of the . . . board were without support or otherwise arbitrary.'" Id. at 1129 (quoting Hill, 472 U.S. at 457).

It is now established under California law that the task of the Board and the Governor is to determine whether the prisoner would be a danger to society if he or she were paroled. See In re Lawrence, 44 Cal. 4th 1181 (2008). The constitutional "some evidence" requirement therefore is that there be some evidence that the prisoner would be such a danger, not that there be some evidence of one or more of the factors that the regulations list as factors to be considered in deciding whether to grant parole. Id. at 1205-06.

In several cases the Ninth Circuit has discussed whether the "some evidence" standard can be satisfied by evidence of the nature of the commitment offense and prior offenses. In Biggs v. Terhune, 334 F.3d 910, 915-17 (9th Cir. 2003), the court explained that the some evidence standard may be considered in light of the Board's decisions over time. The court reasoned that "[t]he Parole Board's decision is one of 'equity' and requires a careful balancing and assessment of the factors considered . . . A continued reliance in the future on an unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation." Id. Although the Biggs court upheld the initial denial of a parole release date based solely on the nature of the crime and the prisoner's conduct before incarceration, the court cautioned that

1  "[o]ver time, however, should Biggs continue to demonstrate exemplary behavior and evidence
2  of rehabilitation, denying him a parole date simply because of the nature of his offense would
3  raise serious questions involving his liberty interest." Id. at 916.

4      The Sass court criticized the decision in Biggs: "Under AEDPA it is not our function to
5  speculate about how future parole hearings could proceed." Sass, 461 F.3d at 1129. Sass
6  determined that it is not a due process violation per se if the Board determines parole suitability
7  based solely on the unchanging factors of the commitment offense and prior offenses. Id.
8  (prisoner's commitment offenses in combination with prior offenses amounted to some evidence
9  to support the Board's denial of parole). However, Sass does not dispute the argument in Biggs
10 that, over time, a commitment offense may be less probative of a prisoner's current threat to the
11 public safety.

12     The Ninth Circuit explained that all of the cases in which it previously held that denying
13 parole based solely on the commitment offense comported with due process were ones in which
14 the prisoner had not yet served the minimum years required by the sentence. Id. Also, noting
15 that the parole board in Sass and Irons appeared to give little or no weight to evidence of the
16 prisoner's rehabilitation, the Ninth Circuit stressed its hope that "the Board will come to
17 recognize that in some cases, indefinite detention based solely on an inmate's commitment
18 offense, regardless of the extent of his rehabilitation, will at some point violate due process,
19 given the liberty interest in parole that flows from relevant California statutes." Id. (citing Biggs,
20 334 F.3d at 917). Even so, the Ninth Circuit has not set a standard as to when a complete
21 reliance on unchanging circumstances would amount to a due process violation.

22     Here, the Board denied parole based primarily on the commitment offense. The Board
23 also denied parole based on petitioner's failure to succeed at prior probation, inadequate
24 programming, and inadequate post-parole employment. (2006 Tr., p. 44-48.) The Los Angeles
25 County Superior Court found that the parole denial did not violate due process because there was
26 "some evidence" in support of the Board's decision. The California Court of Appeal and the
27 California Supreme Court summarily denied petitioner's claims.
28

Petitioner's conviction was for first degree felony murder. In the official version of the crime, petitioner and his friends specifically selected this 80-year old victim because they believed he had money. They bound his feet and gagged him with a bandanna while petitioner sat on him. Although petitioner insists that their intention was only to rob him, the result was that Cookis at some point died of suffocation. Petitioner maintains that he believed Cookis was alive when they left the house. Approximately one year later, after petitioner committed two unrelated burglaries, petitioner was arrested for this murder based on an anonymous tip.

While incarcerated, petitioner completed the Life Skills Program, achieved his G.E.D., completed both printing and graphics vocational programs, and worked as a barber and a porter. Petitioner has not had any drug or alcohol problems before prison, nor while incarcerated. Petitioner has not received any psychiatric treatment. Further, he has participated in Narcotics Anonymous[3] and anger management programs.

Petitioner has received two 115s, both in 1987. He has 18 CDC 128s, the last being in August 1993 for failure to report. Petitioner's psychological report, dated 2004, indicated that he "appears to be a relatively minor risk for danger within the prison system . . . At this point in time, he appears to have no greater risk for violence in the free community than that of the average citizen." (2006 Tr., p. 20.) The report continues, "Inmate Patterson has no mental or mood disorder that places him at risk for uncontrolled behavior. I do believe he needs to further delineate his plans for living on the outside if granted a release." (Id. at 21.) Petitioner had a number of support letters from family members, some of whom indicated that petitioner could live with them, and all of whom pledged their support to petitioner.

There are a number of factors to be considered in assessing whether the Board's decision was supported by "some evidence" that petitioner would present an unreasonable danger to the public if released. Petitioner's conduct in prison was very good, as his only serious infractions had been approximately twenty years prior to this 2006 hearing. The Board denied parole

---

[3] Although he has had no problem with drugs or alcohol, petitioner indicated that he attends these to hear the other inmates' stories and remind him that he does not want to follow their paths.

1  eligibility stating, "The prisoner needs therapy, self-help, and programming in order to face,
2  discuss, understand, and cope with stress in a nondestructive manner as well as to get further
3  insight into the crime.  Until progress is made, the prisoner continues to be unpredictable and a
4  threat to others." (2006 Tr., p. 45).  The court finds that this statement is wholly unsupported by
5  any of the Board's other comments or statements.  Accordingly, this finding was not reasonable
6  in light of petitioner's lack of disciplinary reports, recognition of participating in self-help
7  programs, and receipt of numerous chronos.

8       On the other hand, the Board also appeared concerned that petitioner did not have a firm
9  job offer.  The court notes that in light of the underlying crime as well as the two burglaries soon
10  thereafter were committed for money, the Board's concern regarding petitioner's lack of post-
11  parole employment is relevant and supportive of a finding that petitioner may pose a current
12  dangerousness if released to society.

13       Furthermore, the facts of the crime are especially egregious.  Petitioner assisted in the
14  robbery of a vulnerable, 80-year old victim by sitting on top of him and striking him in the head
15  when he would not stop struggling or yelling, which supports Board's finding that the crime was
16  "especially callous," "dispassionate" and "calculated" (2006 Tr., p. 43).  In addition, petitioner
17  did so for the "trivial motive" of $300.  (Id.)

18       The issue for the instant federal petition is whether the state courts' rejection of
19  petitioner's due process claim was contrary to, or an unreasonable application of, clearly-
20  established Supreme Court authority.  See 28 U.S.C. 2254(d)(1).  It is true that the crime had
21  been committed approximately 24 years earlier and that petitioner was approximately eight years
22  beyond his minimum term at the time of the parole hearing.  As expressed in Biggs, after passage
23  of enough time such a factor ceases to amount to "some evidence" on its own. While it was
24  perhaps a close question as to whether enough time had passed in this case given the particularly
25  egregious circumstances surrounding the murder, whether the Board's decision was supported by
26  "some evidence" is not a close call when the additional layer of deference in the "unreasonable
27  application" standard is added.  Indeed, when the constitutionality of the underlying decision is a
28  close question, it is almost a foregone conclusion that it was reasonable for the state courts to

hold that it was not unconstitutional. That is the case here. The state courts' rejection of the this claim was not contrary to, nor an unreasonable application of, clearly-established Supreme Court authority.

**C.     Case Number C 08-2681 RMW (PR)**

    **1.     Respondent's Issues**

Respondent raises the same arguments discussed above that there is no due process right to have the denial of parole supported by sufficient evidence. As explained above, these arguments have been rejected by the Ninth Circuit.

    **2.     Petitioner's Due Process Claim**

Petitioner claims that the Board's 2007 denial of parole violated his right to due process because it was not supported by at least "some evidence." As described in greater detail above, due process requires that there be "some evidence," as defined in Hill, 472 U.S. at 455-56, that petitioner would present an unreasonable risk of danger to the public if released. See Sass, 461 F.3d at 1128-29; Lawrence, 44 Cal. 4th at 1205-06.

The Los Angeles County Superior Court held that the Board's decision was supported by at least "some evidence" that petitioner was not suitable for parole (Ex. 2.) As in its prior decision in 2006, the Board cited "cruel and callous manner" that the crime was carried out and its very trivial motive (2007 Tr., p. 46-47.) To be sure, these factors were weaker evidence of petitioner's continuing danger to the public in 2007 than they had been in 2006. See Biggs, 334 F.3d at 916-917. Interestingly, the Board discounted its previous concern regarding petitioner's lack of firm employment plan and stated that petitioner has a number of marketable skills, which was all that was required. (Id. at 49.) The only other concern raised by the Board was petitioner's lack of an updated psychological report. The Board stated that while the 2004 report was generally favorable, it was silent as to why it no longer referenced its 1983 and 1985 diagnoses that petitioner had an "Organic Brain Disorder" nor explained why that finding was not mentioned. (Id. at 48.)

In sum, while the Board again relied mainly upon petitioner's commitment offense in denying parole eligibility, there remained in 2007 at least "some evidence" that petitioner would

1  pose a risk of harm to society if released, and that parole should be denied.  Moreover, as at the
2  2004 hearing, the concern expressed in <u>Biggs</u> is not triggered here because the Board did not
3  deny parole solely because of the unchanging factor of the nature of petitioner's offense.  Cf.
4  <u>Rosas v. Nielsen</u>, 428 F.3d 1229, 1232-33 (9th Cir. 2005).  Therefore, the state court's rejection
5  of petitioner's due process claim was not contrary to or an unreasonable application of the "some
6  evidence" standard.

## CERTIFICATE OF APPEALABILITY

The federal rules governing habeas cases brought by state prisoners have recently been amended to require a district court that denies a habeas petition to grant or deny a certificate of appealability ("COA") in its ruling.  <u>See</u> Rule 11(a), Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254 (effective December 1, 2009).  However, the Ninth Circuit has made clear that a state prisoner challenging the Board of Prison Terms' administrative decision to deny a request for parole need not obtain a certificate of appealability.  <u>See</u> <u>Rosas</u>, 428 F.3d at 1232. Accordingly, any request for a COA is DENIED as unnecessary.

## CONCLUSION

The court concludes that petitioner has failed to show any violation of his federal constitutional rights in the underlying parole proceedings.  Accordingly, the petitions for a writ of habeas corpus is DENIED.  In addition, a COA is DENIED as unnecessary.  The clerk shall enter judgment and close the file.

IT IS SO ORDERED.

DATED: 3/23/10

_Ronald M. Whyte_
RONALD M. WHYTE
United States District Judge

Order Denying Petitioner's Petitions for Writ of Habeas Corpus; Denying Certificates of Appealability as Unnecessary
P:\pro-se\sj.rmw\hc.06\Patterson429den